IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KIM TAYLOR REECE, | ) | CIVIL NO.  06-00489 JMS/LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING PLAINTIFF'S |
| vs. | ) | MOTION FOR PRELIMINARY |
| | ) | INJUNCTION |
| ISLAND TREASURES ART | ) | |
| GALLERY, INC. and GAIL ALLEN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

I.  INTRODUCTION

Plaintiff Kim Taylor Reece ("Plaintiff") brings this motion for

preliminary injunction against Defendants Island Treasures Art Gallery ("Island

Treasures") and Island Treasures' owner Gail Allen (collectively, "Defendants").

Defendants' art gallery currently displays a stained glass artwork entitled "Nohe,"

which Plaintiff alleges is an unauthorized copy of his photograph entitled

"Makanani."  Defendants assert that "Nohe" was independently created and does

not infringe upon Plaintiff's copyright.  Plaintiff seeks to preliminarily enjoin

Defendants from displaying or selling the stained glass artwork pending a final

resolution of the case.  A hearing was held on December 11, 2006.  Testifying at

the hearing were:  Kim Taylor Reece, Kanoe Reece, Māpuana de Silva, Gail Allen,

Marylee Colucci and Joe Dwight.  Based on the following, the court DENIES the

Plaintiff's motion.

## II. <u>BACKGROUND</u>

At the center of this copyright dispute are two artworks portraying a

woman performing a hula on the beach.  Hula is a vital expression of Hawaiian

culture.[1]  For many, it is an articulation of nature and beauty, of respect for the

ancient gods and goddesses, of historical memory and legends and of daily life.

Hula plays a role in preserving Hawaiian culture and history.[2]  Although Hawaiian

was not originally a written language, Native Hawaiians have "an extensive

literature accumulated in memory, added to from generation to generation, and

handed down by word of mouth."  1 Ralph S. Kuykendall, *The Hawaiian Kingdom*

10 (1938).  Historically, "[i]t consisted of *meles* (songs) of various kinds,

genealogies and honorific chants, stories and traditional lore in which were

---

[1] "The hula is a general name for many types of Hawaiian folk dances.  Some originated in one locality and spread to others.  Some were peculiar to one island, while others belonged to a whole group but had many versions."  Mary Kawena Pukui, *The Hula, Hawaii's Own Dance,* in *Hula: Historical Perspectives* 70, 70 (Bonnie T. Clause ed. 1980).  "Most of the ancient hulas are gone for all time, although many remain."  *Id.*

[2] Kumu hula Victoria Takamine explains in her Declaration that, "For years hula was the incubator of all our cultural practices.  At a time when many such practices were being destroyed, hula traditions provided a place where those cultural practices could be preserved and incubated."  Takamine Decl. at ¶ 20.

2

imbedded fragments of history and biography," and which were "used as an accompaniment to the *hula*, a large part of it being composed especially for that purpose." *Id.* at 10-11.

Hula kahiko is the ancient or old style of hula.  The movements and materials used in hula kahiko are historically standard.  "Traditional hula draws from a body of motions and has a definite framework in which it works.  There are limitations to hula kahiko whereas fewer limits are found in contemporary hula.  Hula is made up of foot patterns and hand gestures."  Declaration of Māpuana de Silva[3] ("de Silva Decl.") at ¶ 21.  A hula kahiko performance calls for the proper dress.  "A traditional performance required a pā`ū [cloth worn around the waist], four kūpe`e [worn on wrists and ankles], a lei `ā`ī [worn around the neck], and a lei po`o [worn on the head]."  de Silva Decl. at ¶ 23.  The materials in the lei have significant meaning.  "Certain plants are basic to hula kahiko, including maile and ilima . . . . [M]aile is the lei of choice for any performance because it is a kinolau[4] of Laka[5] and it is the piko lei.  The piko lei is a lei that ties us to our ancestors."

---

[3] At the December 11 hearing, de Silva was qualified by the court as an expert in the hula kahiko tradition.

[4] Kinolau are earthly forms, such as plants or forces of nature, taken by a supernatural being or spirit. *Native Hawaiian Rights Handbook* 360 (Melody Kapilialoha MacKenzie ed. 1991).

[5] Laka is a patron diety of the hula. *See id.* at 230.

de Silva Decl. at ¶ 24.  A female dancer wearing maile lei and performing hula kahiko is depicted in the two pieces of art, each presented in a distinctive medium.

Plaintiff is a professional fine art photographer who photographs and licenses primarily hula images.  His photograph "Makanani" is a sepia tone image of a woman kneeling in the beach shorebreak, performing in the hula kahiko tradition with the shoreline in the distant background.  Plaintiff first published "Makanani" in 1988 as a poster and has subsequently licensed the image for use on greeting cards, t-shirts, and picture frame inserts.  According to Plaintiff, the photograph contained the appropriate copyright notice when first published.

Defendant Island Treasures currently displays "Nohe," a stained glass artwork created by Marylee Colucci in 1998.  "Nohe," which is 27 inches tall by 23 inches wide and is composed of over 200 pieces of colored glass, has been on display at the Defendants' art gallery since August 2004.  It includes deep brown mountains, blue ocean, light brown sand and green flora in the dancer's lei.  Like "Makanani," the stained glass portrays a female figure performing a hula movement, dressed in the hula kahiko tradition.  Both works depict, from the same

angle, a woman kneeling on Oahu's Kailua beach[6] performing an `ike motion[7] from the hula noho (sitting) position.  According to kumu hula Māpuana de Silva, to perform an `ike motion, "a dancer raises one hand out and one arm is bent at the elbow and the hand is open and placed behind the eye with the thumb facing downwards and the finger to show the seeing motion."  de Silva Decl. at ¶ 32.

Plaintiff first became aware of the stained glass artwork in May 2006. Plaintiff's attorney contacted Colucci and Defendant Allen and demanded they stop using an unauthorized copy of Plaintiff's photograph.  On June 10, 2006, Defendants responded by letter that the stained glass artwork had been removed from display.  Ex. H attached to Maki Decl.  By the end of July 2006, however, Defendants put "Nohe" back on display, although they agreed with Colucci that it would not be for sale.  Allen Decl. at ¶ 15.  On September 7, 2006, Plaintiff filed a Complaint for copyright infringement and jury demand and the instant motion for preliminary injunction was filed on October 24, 2006.

---

[6] The setting is not apparent from the face of either "Makanani" or "Nohe," but the record reflects that both artists used Kailua beach in Windward Oahu as the setting for their artworks.

[7] `Ike means to "see, know, feel, greet, recognize, perceive, experience, be aware, understand[.]"  Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 96 (Revised and Enlarged ed. 1986).  "The `ike motion is used in many hālau to mean to see, to view, to behold and can be done on three levels:  sitting, kneeling and standing.  The motion has been used for generations by hula practitioners . . . . The angle of the motion depends on the mele and what the dancer is looking towards.  However, the dancer is most often looking upwards."  Takamine Decl. at ¶ 31.

At the December 11, 2006 hearing, the court viewed an 11 inch by 14 inch print of the sepia "Makanani," as well as the original stained glass artwork "Nohe."  Colucci testified that she did not copy Plaintiff's photograph, but drew from her own memories as a hula dancer, from memories and photographs of her niece ("Nohe's" namesake) dancing hula and from pictures of other hula performances.  She said she has created other stained glass works of hula dancers on the beach and that the dancers are always faceless, with similar skin and hair color and with a lei or flower in their hair.  Colucci explained that she includes `ilima in her dancers' lei because the flower is her hālau's signature.  Allen also confirmed at the hearing that "Nohe" is currently not for sale, but is on display at the gallery.

Plaintiff argues that "Nohe" is a virtually identical copy of "Makanani" and that Plaintiff's business of selling and creating original photographs will be irreparably harmed if Defendants are not enjoined from displaying and selling the stained glass work.  Defendants claim that Plaintiff will not succeed on the merits of his action because:  (1) Plaintiff fails to prove ownership of a valid copyright; (2) Plaintiff has not established "copying"; (3) "Nohe" was independently created; and (4) Plaintiff's claim is likely barred by the statute of limitations.  Further, Defendants assert that Plaintiff has not

6

demonstrated irreparable injury, that the balance of hardships tips in Defendants'
favor, and that the public interest will be harmed if the injunction is granted.

## III.  STANDARD OF REVIEW

"Preliminary injunctive relief is available to a party who demonstrates
either:  (1) a combination of probable success on the merits and the possibility of
irreparable harm; or (2) that serious questions are raised and the balance of
hardships tips in its favor."  *LGS Architects, Inc. v. Concordia Homes of Nevada*,
434 F.3d 1150, 1155 (9th Cir. 2006).  These two formulations "represent two
points on a sliding scale in which the required degree of irreparable harm increases
as the probability of success decreases."  *Id.* (*citing A & M Records, Inc. v.
Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir. 2001)).  "Under federal copyright
law, however, a plaintiff that demonstrates a likelihood of success on the merits of
a copyright infringement claim is entitled to a presumption of irreparable harm."
*Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999).

## IV.  ANALYSIS

The Plaintiff is not entitled to a preliminary injunction because he has
not demonstrated a likelihood of success on the merits or the possibility of
irreparable harm.  Each of these factors is considered in turn.

A.     The Plaintiff will not likely succeed on the merits of his copyright infringement claim

To prevail on his claim for copyright infringement, Plaintiff must prove ownership of a valid copyright and copying of constituent elements of the work that are original.  *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 876 (9th Cir. 2005); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) ("A copyright plaintiff must prove (1) ownership of the copyright; and (2) infringement -- that the defendant copied protected elements of the plaintiff's work."); *see also* 17 U.S.C. § 106 (granting copyright holders the exclusive right to reproduce the copyrighted work, to distribute copies of the work, and to display the work publicly).  The court concludes that Plaintiff owns a valid copyright in his photograph "Makanani," but that the stained glass artwork "Nohe" is not a copy of the protected elements of Plaintiff's photograph.

### 1.     Ownership of a valid copyright

Plaintiff is the author of the photograph and must establish the following elements of copyright ownership:  (1) originality in the author; (2) copyrightability of the subject matter; (3) a national point of attachment of the work, such as to permit a claim of copyright; and (4) compliance with applicable statutory formalities.  *See* Melville B. Nimmer & David Nimmer, *Nimmer on*

*Copyright*, § 13.01 at 13-6 (2006).[8]  Defendants contend that Plaintiff has failed to prove elements 1, 2, and 4 -- originality, copyrightability and compliance with statutory formalities.  Each is discussed in turn.

a.  <u>Originality</u>

A work is original to the author and thus qualifies for copyright protection if the work is independently created by the author and possesses some minimal degree of creativity.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 344 (1991).  Almost any photograph "may claim the necessary originality to support a copyright merely by virtue of the photographer's personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken."  *Los Angeles News Serv. v. Trullo*, 973 F.2d 791, 794 (9th Cir. 1992).  Plaintiff's photograph is sufficiently original to be copyrightable.

b.  <u>Copyrightability</u>

Not all elements of Plaintiff's photograph are copyrightable. Copyright protection does not extend to the idea underlying the work; only the

---

[8] "There is a statutory presumption that Copyright Office registrations within five years of publication constitutes prima facie evidence of ownership."  *Television Digest, Inc. v. U.S. Tel. Ass'n*, 841 F. Supp. 5, 8 (D.D.C. 1993) (*citing* 17 U.S.C. § 401(c)).  Plaintiff first published "Makanani" in 1988, but obtained a certificate of copyright registration in 1997 -- nine years after publication.

expression of the idea by the artist is protected. *See* 20 U.S.C. § 102(b). Some general ideas are not protected by copyright law; instead, "they remain forever the common property of artistic mankind." *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) (citation and quotation signals omitted). Further, everyone is free to use materials in the public domain, and no one can obtain the exclusive right to them by incorporating them in a literary, musical or artistic work. *See Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 23-25 (9th Cir. 1933). A "combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).

Under *Los Angeles News Service,* "the creative decisions involved in producing a photograph may render it sufficiently original to be copyrightable and [courts] have carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as protectible elements of a photographer's work." 973 F.2d at 794 (citation and quotation signals omitted). The court concludes, for the purposes of the instant motion, that Plaintiff's photograph is copyrightable, although elements derived from the public domain or otherwise unprotected by copyright cannot serve as the basis of Plaintiff's claim.

c.   Compliance with statutory formalities

Plaintiff's photograph, first published in 1988, is subject to the requirements of 17 U.S.C. § 401.  *See* 17 U.S.C. § 405(a).  The form of notice required includes:  the symbol © (or the word "copyright"); the year of the first publication of the work; and the name of the owner of the copyright.  17 U.S.C. § 401(b).  Plaintiff testified at the hearing that, in 1988 when "Makanani" was first published, it contained a copyright notice with the copyright symbol, the year (1988) and Plaintiff's name.[9]  The court concludes, for the purposes of this motion for preliminary injunction, that Plaintiff complied with the statutory formalities. Plaintiff therefore owns a valid copyright in his photograph.

Finding that Plaintiff has established ownership of a valid copyright, the court next turns to whether the stained glass artwork is an unauthorized copy of the protected elements of Plaintiff's copyright.

## 2.   Copying of elements of the work that are original

"Copying requires evidence that a defendant literally copied the designs or, alternatively, that a defendant had access to the protected designs

---

[9] For works published after March 1, 1989, the effective date of the Berne Convention Implementation Act, the statute does not require publication with the prescribed copyright notice. Therefore, Plaintiff's republication of the image after that date did not require the statutory form of notice or affect the validity of the copyright.

11

before creating the accused designs with an additional showing of 'substantial similarity not only of the general ideas but of the expression of those ideas as well.'" *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1368 (Fed. Cir. 2006) (*quoting Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990)). *See also Three Boys Music Corp.*, 212 F.3d at 481 ("Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'").

      a.   <u>Access</u>

     "Proof of access requires 'an opportunity to view or to copy plaintiff's work.'" *Three Boys Music Corp.*, 212 F.3d at 482 (*quoting Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977)).  This is often described as providing a "reasonable opportunity" or "reasonable possibility" of viewing the plaintiff's work.  *Id.* (*citing* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.02[A], at 13-19 (1999)). Circumstantial evidence of reasonable access is proven in one of two ways:  (1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work, or (2) the plaintiff's work has been widely disseminated.  *Three Boys Music Corp.*, 212 F.3d at 482.

Plaintiff's "Makanani" photograph has been widely disseminated. From 1995 through 2003, the image was used as an insert in koa picture frames sold at all Hawaii Longs, Walmart and Kmart stores.  The photograph has been published in several magazines and newspapers in Hawaii.  Further, Plaintiff approximates that 10,000 posters and 20,000 greeting cards bearing the image have been sold.  The court concludes that there was a "reasonable opportunity" or "reasonable possibility" of viewing the Plaintiff's work.[10]

        b.    <u>Substantial similarity</u>

The next step is to determine whether there is a sufficient level of similarity between the copyrightable elements of Plaintiff's photograph and the stained glass "Nohe."  *See Feist Publ'ns, Inc.*, 499 U.S. at 361.  A two-part test is used:  an extrinsic test and an intrinsic test.  *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003).

At first glance, these works appear to be images of the same likeness, that is, they could each be renditions of the same performance.  Each captures a woman performing hula on the beach, kneeling in the sand in the midst of an `ike movement, with the right arm outstretched and an open left hand against the face.

---

[10] The court does not find that Plaintiff's work is so widely disseminated that the inverse ratio rule is applicable.  The rule holds that a lower standard for "substantial similarity" may be applied when a "high degree of access is shown."  *See Three Boys Music Corp.*, 212 F.3d at 485.

The women are each adorned in the traditional hula kahiko fashion and their long dark hair flows behind them.  And each image presents the woman from the same angle and orientation, from a perspective that is facing the left side of her body, as if in profile.  Yet aside from these similarities, the court cannot say that these two images are "substantially similar" under established legal principles.

### i.   Extrinsic test and copyrightable elements

Under the extrinsic test, the court performs an "analytic dissection,"[11] or a process which filters and isolates each of the constituent elements of the copyrighted works to the exclusion of other elements.  *Rice*, 330 F.3d at 1174; *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997) ("'Analytic dissection' focuses on isolated elements of each work to the exclusion of the other elements, combination of elements, and expressions therein.").[12]  Plaintiff (the party claiming infringement), "may place *no* reliance

---

[11] In applying this test to works of art, "a court looks to the similarity of the objective details in appearance.  Although we do not attempt here to provide an exhaustive list of relevant factors for evaluating art work, the subject matter, shapes, colors, materials, and arrangement of the representations may be considered in determining objective similarity in appearance." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) (citation omitted).

[12] Among the unprotectable elements which the court must filter out are:  ideas, as distinguished from expression; elements borrowed from another artists or from the public domain; instances in which a particular expression "merges" with the idea being expressed; and the degree to which the form of the expression is so standard in the treatment of a given idea that is constitutes a *scenes a faire*, or a "scene which must be done."  *See Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1176-77 (C.D. Cal. 2001) (discussing the filtration process).

14

upon any similarity in expression resulting from unprotectable elements." *Apple Computer, Inc.*, 35 F.3d at 1446 (citation and quotation signals omitted).

Under the Ninth Circuit's extrinsic test:

(1) The plaintiff must identify the *source(s)* of the alleged similarity between his work and the defendant's work.

(2) Using analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright.  Where, as in this case, a license agreement is involved, the court must also determine which features the defendant was authorized to copy.  Once the scope of the license is determined, unprotectable ideas must be separated from potentially protectable expression; to that expression, the court must then apply the relevant limiting doctrines in the context of the particular medium involved, through the eyes of the ordinary consumer of that product.

(3) Having dissected the alleged similarities and considered the range of possible expression, the court must define the scope of the plaintiff's copyright--that is, decide whether the work is entitled to "broad" or "thin" protection.  Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying.

*Id.*  The parties here agree that "Makanani" is entitled to "thin" protection.  "When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."  *Id.* at 1439; *see also id.* at 1442

15

("[W]e conclude that only 'thin' protection, against virtually identical copying, is appropriate.").

Plaintiff has identified the following sources of alleged similarity between his work and the stained glass piece:  the expression of the idea of "hula dancers in an identical pose," "both dancers have their arms, hands, heads and shoulders in the same position," both have "kupe`e (bracelets) of identical thickness, position and make-up on both wrists," and "[b]oth images are shown at the same angle, with the dancers in the same posture."  Plaintiff's Mem. in Sup. at 12.  At the hearing, Plaintiff asserted that the works are "identical" and, as an example, pointed to the position and shape of the fabric that falls behind the dancer toward her feet.  Plaintiff failed to identify any additional sources of similarity during the hearing.

Using analytic dissection, the court must determine whether any of the allegedly similar features are protected by copyright.  Copyright protection does not extend to any "idea" or "concept," "regardless of the form in which it is described, explained, illustrated, or embodied in such work."  20 U.S.C. § 102(b).  "It is an axiom of copyright law that the protection granted to a copyrighted work extends only to the particular expression of the idea and never to the idea itself."  *Sid & Marty Krofft Television Prods., Inc.*, 562 F.2d at 1163.  The line between

idea and expression in copyright infringement cases is often blurry and difficult to identify in the context of a photograph.[13]

The protectable elements of a photograph generally include lighting, selection of film and camera, angle of photograph, and determination of the precise time when the photograph is to be taken.  *See* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 2.08[E][1], at 2-130 (1999).[14]  In the Ninth Circuit, "courts have recognized repeatedly that the creative decisions involved in producing a photograph may render it sufficiently original to be

---

[13] In fact, one court determined that, "[i]n the context of photography, the idea/expression distinction is not useful or relevant."  *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 461 (S.D.N.Y. 2005).  "The cases agree that the relevant comparison is between the protectible elements" in the two works.  *Id.* at 462.

[14] Generally, a  "copyright does not give to the owner thereof an exclusive right to use the basic material, but only the exclusive right to reproduce his individual presentation of the material."  *Kisch v. Ammirati & Puris Inc.*, 657 F. Supp. 380, 382 (S.D.N.Y. 1987) (citation omitted).  Accordingly, "the fact that the same subject matter may be present in two paintings does not prove copying or infringement."  *Id. (quoting Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.*, 575 F.2d 62, 65 (3d Cir. 1978)).   "As Justice Holmes stated: 'Others are free to copy the original [subject matter].  They are not free to copy the copy.'"  *Id.* (citation and quotation signals omitted).  *Kisch* concluded that:

> in cases involving photographs, a "[p]laintiff's copyrights cannot monopolize the various poses used," and "can protect only [p]laintiff's particular photographic expression of these poses and not the underlying ideas therefor."  The copyrightable elements of a photograph have been described as the photographer's "original" "conception" of his subject, not the subject itself.  In particular, the copyrightable elements include such features as the photographer's selection of lighting, shading, positioning and timing.

*Id.* (citations omitted).

17

copyrightable and 'have carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as protectable elements of a photographer's work.'"  *Los Angeles News Serv.*, 973 F.2d at 794 (*quoting United States v. Hamilton*, 583 F.2d 448, 452 (9th Cir. 1978)).[15]

The idea of a hula dancer performing an `ike movement in the hula kahiko style from the noho position is not protected.  Further, the parties agree that the `ike motion itself is not protected.  Instead, the protected elements of Plaintiff's "Makanani" are limited to those that derive from the Plaintiff's expression of the idea of a hula dancer performing the `ike motion.  Plaintiff's expression of those ideas include the angle, timing, and lighting of the photograph, as well as the expression of the hula kahiko performance and dress.  Unprotected elements of the photograph are those that are not original, but are part of the public domain, including natural elements like the ocean and shoreline.  *See*

---

[15] *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074-75 (9th Cir. 2000), explained that:

> Courts today continue to hold that such decisions by the photographer--or, more precisely, the elements of photographs that result from these decisions--are worthy of copyright protection.  *See, e.g., Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.") (citations omitted); *Eastern America Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395, 417 (S.D.N.Y. 2000).

*Satava*, 323 F.3d at 813 ("These ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them.  An artist may, however, protect the original expression he or she contributes to these ideas.").

Once the court separates the protectable from the unprotectable elements, the court "must then apply the relevant limiting doctrines.  Under the doctrine of *scenes a faire*, when similar features are indispensable and naturally associated with, or at least standard, in the treatment of given idea, they are treated like ideas and are therefor not protected by copyright.  *See Rice*, 330 F.3d at 1175; *Apple Computer, Inc.*, 35 F.3d at 1444.

Elements particular to the hula kahiko tradition are *scenes a faire*. Hula movements have standard forms and to perform an `ike motion, "a dancer raises one hand out and one arm is bent at the elbow and the hand is open and placed behind the eye with the thumb facing downwards and the finger to show the seeing motion."  de Silva Decl. at ¶ 32.  At the hearing, de Silva testified that the right hand would naturally be up -- "always up because your knowledge does not come from yourself.  It comes from your kupuna.[16]  It comes from everything

---

[16] Kupuna means ancestor, grandparent, relative or close friend of the grandparent's generation.  *See* Pukui & Elbert, *supra*, at 186.

19

that's come before you and that's always up towards the heavens."  To the extent the dancers in the artworks are performing an `ike motion from the noho position, their similar features are indispensable, naturally associated with the motion, or at least standard.  Further, the dancer's hula kahiko dress is *scenes a faire*; the proper dress required a pā`ū, four kūpe`e, and a lei `ā`ī and lei po`o.  *See* de Silva Decl. at ¶ 23.  Because these elements are *scenes a faire*, they not protected by copyright.

When the protected elements of Plaintiff's "Makanani," viewed in isolation, are compared to the stained glass artwork, their differences are clear. The angle and perspective of the pieces are very similar (both viewed in profile from the dancer's left side), but the position of the subject dancer relative to her setting is not.  The dancer in "Makanani" kneels in the shorebreak with waves splashing her knees, facing the ocean, and appears large and tightly focused in relation to the unfocused shoreline distant in the background.  On the other hand, the dancer in "Nohe" kneels on the beach, but does not face the ocean -- which is directly behind her -- and the top portion of the piece is dominated by the smaller island jetting out of the ocean.  The angle and position of the dancers' bodies are in the standard `ike position, but even those angles vary slightly.  Plaintiff's Exhibit 2 is a transparent black and white overlay of the "Makanani" model, placed over a color copy of "Nohe," which shows that the dancers' outstretched

20

right arms are not perfectly aligned (the top of the "Makanani" right arm is higher and does not appear to bend at the elbow, as "Nohe's" does). Exhibit 2 also shows that the position of the dancer's left foot is different, and that "Makanani's" foot and heel are larger and extend farther along the sand. Exhibit 2 demonstrates the difference in the angle and thickness of the dancer's bent left arm and hand ("Makanani's left elbow and forearm extend farther to the left and are thicker than "Nohe's," and "Makanani's" left hand appears to be open, exposing the palm, while "Nohe's" left hand appears closed). Finally, although difficult to discern from Exhibit 2, Plaintiff's "Makanani" appears to be bending further backward than "Nohe," with her back in a more arched position.

Plaintiff's timing and decision when to take the photograph is protected, but these elements are not relevant to any similarities found in the stained glass piece. Plaintiff's decision to take the shot at the moment the wave reached the model, so that the water can been seen splashing into her knees, is unique to "Makanani." There is no wave crashing up against the dancer in "Nohe;" in fact, the dancer is positioned well away from the ocean. The lighting element is unique to the photograph. The striking contrast between dark and light and the shading of the sepia "Makanani" are absent from the stained glass. For example, the light coloring of the dancer's left arm and hand in "Makanani" is

completely absent in "Nohe."  Instead, the flesh color in "Nohe" appears to be monotone throughout.

"Makanani's" expression of the traditional hula kahiko dress is different from "Nohe's." Although both wear the traditional kūpe`e on wrists and ankles and lei around the head and neck, the leaves in the stained glass are bright green and clearly delineated, in contrast to the photograph's darker, fuller, less clearly delineated leaves.  Significantly, although the lei are worn in the same position around the neck and down the bare torso, the lei around "Nohe's" neck is thinner and composed of maile interwoven with colorful `ilima.  "Makanani" appears to wear multiple strands of maile around her neck, which are denser and without `ilima interwoven.  The meaning of this lei -- and therefore its expression -- is distinct, because the kinolau represent different ideas.[17]  With respect to the Plaintiff's expression of the traditional lei po`o around the head, "Nohe's" is visible only on the front and top of her head, while "Makanani's" is composed of more leaves and is more clearly visible all around the head.   Finally, the cloth worn by the dancers is worn in the same style, but expressed in a different fabric; the model in the photograph wears a printed fabric with designs in contrast to the plain, off-white fabric in the stained glass.

_____

[17] Maile is a kinolau (earthly manifestation) of Laka (patron diety of hula).  According to de Silva, `ilima is the symbolic flower of Oahu and is used in traditional ceremonies.

The facial expression of the dancer in "Makanani" -- a serious, contemplative appearance -- is fully absent from the featureless face in "Nohe." Colucci testified that in all of her work, including "Nohe," she omitted facial features in an effort to represent all Hawaiian hula dancers, not just a single dancer. The remaining similarity is the dancers' dark, windblown hair. Plaintiff's Exhibit 2 clearly shows the differences in the dancers' hair. "Makanani's" is shorter, more bluntly cut and reaches to the waistline. On the other hand, the hair in the stained glass flows all the way to the left edge of the piece and extends beyond the dancer's hips, with clearly outlined strands and pointy, sharp ends.

Upon careful examination, for the purposes of this motion, the court concludes that Plaintiff has failed to demonstrate that the protected elements of Plaintiff's photograph are substantially similar to the stained glass artwork. In the context of "thin" protection, "Makanani" and "Nohe" are not virtually identical. Although the position of the dancer in the `ike motion is common to both artworks and both are set on Kailua beach, they cannot be described as substantially or virtually identical. The appearance of the dancers is different; notably, the absence of detail in the stained glass. The dancer represented in "Nohe" has no facial features, hand details, or muscular differentiation, but simply shows the outline of the body. The mountains and ocean dominate the upper half of the

stained glass, but not the photograph.  The dancers' hairstyles are notably different lengths and shapes.  Finally, the sepia tone of the photograph is markedly contrasted by the vibrant colors of the stained glass.

### ii.   Intrinsic test

The intrinsic test is a "subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (citation and quotation signals omitted).  At a very high level of generality, both works portray the same traditional hula movement on a beach, but the feelings evoked by each are likely different to an ordinary viewer.

The medium each artist has chosen in which to express the hula kahiko performance contributes to the different feel and concept of the works as a whole.  The sepia photograph's stark contrasts between darkness and light are characteristic of the Plaintiff's choice of film, exposure and timing.  An entirely different feeling emerges from the brightly colored and textured stained glass collage, which can be viewed from either the front or reverse.

The limitations of the stained glass medium also contribute to the different feeling.  Every piece of glass is surrounded by a dark outline, which emphasizes the hard boundary of each piece and eliminates any contours, shading

or depth.  The lack of detail in the dancer's features imbues the work with a level of abstraction, which is not found in the photograph.  The dancer's blank face makes her anonymous, whereas the model in "Makanani" is clearly a specific person, which evokes a different response to the artwork as a whole.

Undoubtably, the central figure in each work -- the dancer -- is remarkably similar in both her position toward the viewer and in her bodily proportions.  These similarities alone, however, do not mean that "an 'ordinary reasonable person' would perceive a substantial taking of protected expression." *Dr. Seuss Enters., L.P*, 109 F.3d at 1399.  On balance, the court cannot say that the works are substantially similar, much less that they are virtually identical. Plaintiff has failed to prove the required elements at this stage.  The court concludes, therefore, that Plaintiff has failed to make a showing of probable success on the merits.[18]

//

//

---

[18] Because Plaintiff has failed to establish substantial similarity, there is no presumption of copying.  The court therefore need not address whether the artist, Colucci, independently created "Nohe."  *See Three Boys Music Corp.*, 212 F.3d at 486 ("By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying.  The burden shifts to the defendant to rebut that presumption through proof of independent creation."). Further, because Plaintiff has not established a reasonable likelihood of success on the merits, the court does not reach Defendants' argument that Plaintiff's claim is barred by the statute of limitations.

B.      <u>Plaintiff has not demonstrated that he will be irreparably harmed if Defendants are not enjoined</u>

Because the court concludes that Plaintiff has not established a reasonable likelihood of success on the merits of his copyright infringement claim, there is no presumption of irreparable harm.  *See Cadence Design Sys.*, 125 F.3d at 826.  Plaintiff has not set forth evidence that he will be irreparably harmed.  He simply asserts that "defendants' actions in displaying and offering for sale their infringing work, without Mr. Reece's authority, can only serve to diminish Mr. Reece's ability to conduct his business."  Plaintiff's Mem. in Sup. at 13.  Plaintiff's bare assertion does not establish the possibility of irreparable harm, and his conclusory statement is unaccompanied by any additional evidence.  Such a speculative claim is insufficient to grant the relief requested.  *See Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.").  When viewed along the sliding scale, Plaintiff has not met his burden for injunctive relief; he has both failed to make a showing of probable success on the merits and failed to establish the possibility of irreparable injury.

//

//

C.  The balance of hardships does not tip in favor of Plaintiff

"The balance of hardships factor may assume significance in cases where the plaintiff has not established a strong likelihood of success on the merits." *Cadence Design Sys., Inc.*, 125 F.3d at 830.  Plaintiff has not established that the balance of hardships tips in his favor.  In fact, Plaintiff has set forth no evidence or argument regarding the balance of hardships.  Defendants claim the balance of hardships tips in their favor because the gallery relies on a regular supply of art from local artists and approximately five percent of consignments are artworks featuring hula dancers.  According to Defendants, artists have stopped producing artworks with hula images from the gallery and some have removed their works from the gallery.  On the current record, the court cannot say that the balance of hardships tips in favor of Plaintiff, the moving party.

The court concludes that Plaintiff has not met his burden for preliminary injunctive relief at this time.  The court wishes to make clear, however, that its ruling is limited in nature and applies only to this particular piece of art, "Nohe."

## V.  CONCLUSION

Based on the record, the Plaintiff has not demonstrated a likelihood of success on the merits, the possibility of irreparable harm or that serious questions

are raised and the balance of hardships tips in his favor.  Based on the foregoing,

the court DENIES Plaintiff's motion for preliminary injunction.

IT IS SO ORDERED.

DATED at Honolulu, Hawaii, December 22, 2006.


J. Michael Seabright
United States District Judge


Kim Taylor Reece v. Island Treasures Art Gallery et al., Civ. No. 06-00489 JMS/LEK, Order
Denying Plaintiff's Motion for Preliminary Injunction